UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOSE VASQUEZ GONZALES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-15 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

In September 2003, a Victoria County jury found Petitioner Jose Vasquez Gonzales guilty of murder and sentenced him to life imprisonment. Gonzales now brings this application for habeas corpus relief under 28 U.S.C. § 2254, alleging that his conviction was unconstitutional because (1) he received ineffective assistance of counsel; (2) the prosecution's use of Comparative Bullet Lead Analysis evidence, now the subject of much scientific doubt, rendered his trial fundamentally unfair; (3) the jury charge was so erroneous that it violated the requirements of due process; and (4) that he is actually innocent. Docket Entry No. 1. Respondent moves for summary judgment. Docket Entry No. 19.

The magistrate court has submitted a Memorandum and Recommendation recommending that this Court grant summary judgment and deny Petitioner habeas relief on all his claims. Docket Entry No. 25.

1

Petitioner timely filed objections to the Memorandum and Recommendation. Docket Entry No. 26.  Having reviewed the matter *de novo*, this Court agrees with the magistrate court's conclusion that the habeas petition should be denied.  However, the Court concludes that the ineffective assistance claim is not an easy call and analyzes that issue at more length in this order. Because of the closeness of the *Strickland* issue, the Court will grant a certificate of appealability on that single issue.

## I.   BACKGROUND[1]

In June 2001, four teenage gang members spent a night at a motel in Victoria.  At approximately 6:00 a.m. the next morning, someone knocked at the motel room door.  One of the teens, Martin Gonzales, went to answer the door.   Upon opening it, he was shot dead by a person standing outside.  Jose Montoya, one of the other teens in the room, later identified Petitioner as the shooter from a photographic lineup.

### A. The Trial

At trial, the State's evidence included testimony from Montoya, who identified Petitioner as the gunman and a member of a rival gang.  The State also presented testimony from Ricardo Moran, who was living with Petitioner's sister at the time of the murder.  Moran testified that he had

---

[1]  The history of the case is presented in more detail in the magistrate court's Memorandum and Recommendation.  *See* Docket Entry No. 25.

overheard a conversation between Petitioner and Petitioner's mother in which Petitioner stated that "[h]is stepdaughter had a problem or something." Docket Entry No. 17-19 at 31. Additionally, he testified as follows in response to the prosecutor's examination:

> Q:  Was [Petitioner] happy or mad when he left his mother's house?
>
> A:  Mad.
>
> Q:  Did he go alone or with others to solve the problem?
>
> A:  By himself.
>
> Q:  Did you hear him later tell his mother where he went?
>
> A:  No.
>
> Q:  Do you recall what you told me in the hospital?
>
> A:  Yes.
>
> Q:  Did you tell me he went to a motel?
>
> A:  Something like that.
>
> Q:  And what did Jose Gonzales do when he got to the hotel? What did you hear him say?
>
> A:  Some accident had happened, something like that.
>
> Q:  Did you hear him say that someone was dying, because of this accident?
>
> A:  No, that some accident had happened, but somebody had died.

Q:  One person, two people, three people?

A:  I believe two.

*Id.* at 33–34.  However, Moran denied overhearing Petitioner say that he had committed the murder.

Although the State introduced this evidence to prove that Petitioner personally fired the shot that killed Gonzales, it also pursued an alternate theory: that Petitioner had ordered a fellow gang member to carry out the murder.   Accordingly, the State presented the testimony of Johnny Kay Fuentes, a member of Petitioner's gang.  Fuentes testified that Petitioner was the highest ranking member of his gang in Victoria at the time of the shooting, and that he was the one to make decisions.  Fuentes also testified that Gonzales had been a member of a rival gang, that the two gangs had been fighting in the weeks leading up to the shooting, and that Gonzales's gang had insulted Petitioner's gang at a bar.  Finally, Fuentes testified that Petitioner was not the shooter—thus contradicting Montoya's testimony— but stated that the shooting could not have taken place without Petitioner's orders.

During closing argument, the prosecutor made two statements which Petitioner now contends his trial counsel was deficient for not objecting to. First, in closing argument, the prosecutor twice misstated Moran's

testimony, first by stating that Moran "admit[ted] to telling [the prosecutor] at the hospital that he also overheard the defendant tell others that he had killed those boys," and later by stating "I have, also, talked about what [Mr. Moran] heard.  Got a problem, got to fix it, go to a motel.  There is an accident.  They're bleeding to death.  'I killed them.'"  Docket Entry No. 17-29 at 30, 36.  Second, the prosecutor made an impassioned appeal for the jury to imagine that their child was the victim.  *See id.* at 56 ("[W]ho says it couldn't have been your kid? . . .  It could have been your kid inside room 332.  It could have been your kid that disrespected [Petitioner's gang].  And it could have been your kid on the emergency room bed.").

## B. Appeal and Post-Conviction Proceedings

The Court of Appeals confirmed Petitioner's conviction in June 2005, and the Texas Court of Criminal Appeals denied his out-of-time petition for discretionary review in February 2010.  The state trial court made findings of fact and denied his state petition for writ of habeas corpus in March 2011, holding on the ineffective assistance issue that Petitioner "ha[d] not proven to a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different . . . if it was improper argument."[2]  Docket Entry No. 17-41 at 19 (internal quotation marks and

---

[2] The state habeas trial court did not take evidence on the ineffective assistance claim,

citation omitted) (quoting state intermediate appellate court decision affirming Petitioner's conviction).   The Court of Criminal Appeals then denied the petition "without written order on findings of trial court without hearing" in May 2011.   Docket Entry No. 17-40 at 2.   Petitioner timely filed this federal habeas case in March 2012.

## II.   THE MEMORANDUM AND RECOMMENDATION

In October 2012, the magistrate court submitted its Memorandum and Recommendation on the motion for summary judgment, and Petitioner timely filed objections.   Docket Entry Nos. 25; 26.   The Court adopts the magistrate court's analysis on all of the claims except for the ineffective assistance claim, which will be discussed further below.   Petitioner has failed to show that the trial court's admission of Comparative Bullet Lead Analysis testimony rendered his trial fundamentally unfair.   *See id.* at 15–17; *cf. United States v. Berry*, 624 F.3d 1031, 1040 (9th Cir. 2010) ("While the [Comparative Bullet Lead Analysis] evidence introduced against Berry may have been flawed, we do not find it so arbitrary as to render Berry's trial 'fundamentally unfair.'   The criticisms of [Comparative Bullet Lead Analysis] evidence that Berry relies on indicate that it is precisely the kind of evidence that the adversary system is designed to test.   Vigorous cross-

---

such as an affidavit from Petitioner's defense counsel explaining his rationale for failing to object to the two statements that Petitioner takes issue with.

examination would have exposed its flaws to the jury."). Likewise, Petitioner has not shown that the jury charge violated his due process rights either by being at variance with the indictment or by not being supported by the evidence at trial. *See* Docket Entry No. 25 at 17–19. And Petitioner's claim that he is actually innocent fails because, as the Supreme Court has held, actual innocence is not by itself a constitutional claim. *See id.* at 20–21.

## III.   THE INEFFECTIVE ASSISTANCE CLAIM

With regard to the ineffective assistance claim, the Court ultimately agrees with the magistrate court's conclusion that Petitioner has failed to show that the state habeas court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). *See* Docket Entry No. 25 at 12–13. But because the Court concludes that this is a debatable claim that warrants a certificate of appealability, the Court writes separately to explain its analysis of this issue.

### A. The Appropriate Standard of Review

Although the magistrate court accurately laid out the general standards of review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *see* Docket Entry No. 25, it erroneously applied the "doubly deferential" standard of review when evaluating defense counsel's

performance under *Strickland*'s first prong.  *Cf. Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Because the Court holds that the state habeas court's decision is entitled to AEDPA deference only on the prejudice prong of *Strickland*, it discusses this issue in more detail.

Federal district courts must give AEDPA deference to state court decisions for "any claim that was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254.  However, in cases where the state habeas court adjudicated only one prong of the *Strickland* analysis, AEDPA deference is given for that prong while the other prong is reviewed *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing the prejudice prong *de novo* because the state court had not reached that issue); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (same); *see, e.g.*, *White v. Thaler*, 610 F.3d 890, 899 (5th Cir. 2010); *see also Salt v. Epps*, 676 F.3d 468, 480 & n.46 (5th Cir. 2012).[3]

---

[3] Of course, under *Harrington v. Richter*, 131 S. Ct. 770 (2011), courts must give AEDPA deference for both *Strickland* prongs in cases where the state habeas court issued a summary denial of habeas relief.  As some commentators have noted, *Harrington* can provide state courts with a perverse incentive: by issuing summary denials of habeas relief, they may both lighten their own workload and make it more difficult for their decisions to be vacated on federal habeas review.  *See, e.g.*, Matthew Seligman, Note, Harrington*'s Wake: Unanswered Questions on AEDPA's Application to Summary Dispositions*, 64 STAN. L. REV. 469, 478–79 & n.61 (2012).  The cases cited above holding that a state court's discussion of only one *Strickland* prong results in *de novo* federal habeas review of the other prong highlights this issue: a state court that addresses one aspect of the *Strickland* inquiry receives less AEDPA deference than one that addresses neither prong and just issues a summary denial.

In this case, the Court of Criminal Appeals issued a summary denial of Petitioner's state habeas claim, holding that the petition was denied "without written order on findings of trial court without hearing." Docket Entry No. 17-40 at 2. When faced with a summary decision of this type, federal district courts must "look through" to the last explained state court decision on the matter—in this case, the findings of fact and conclusions of law of the state habeas trial court—to determine which claims the state habeas court adjudicated on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000) (internal quotation marks and citation omitted); *see also Reed v. Thaler*, No. H-11-4365, 2012 WL 1952420, at *5 (S.D. Tex. May 30, 2012) (interpreting identical Court of Criminal Appeals order to adopt findings of state habeas trial court and presuming those findings to be reasonable under AEDPA).

The portion of the state habeas trial court's findings of fact and conclusions of law addressing Petitioner's ineffective assistance claim held that Petitioner "ha[d] not proven to a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been

---

The tension between the rules of *Harrington* and *Rompilla* has not gone unnoticed by Defendant. The State of Texas recently filed an amicus brief in a case from the Sixth Circuit asking the Supreme Court to grant certiorari and hold that *Harrington* implicitly overruled *Rompilla* and *Wiggins*. *See* Brief for Texas as Amicus Curiae Supporting Petitioner, *Wolfenbarger v. Foster*, No. 12-420, 2012 WL 5424729 (2012), *cert. denied*, -- S. Ct. --, 2013 WL 1091769 (2013).

different . . . if it was improper argument."  Docket Entry No. 17-41 at 19 (internal quotation marks and citation omitted).  These findings constitute an adjudication on the merits only of the prejudice prong of *Strickland*. Accordingly, this Court will review *Strickland*'s deficiency prong *de novo*, but will give AEDPA deference to the state habeas court's finding that Petitioner was not prejudiced by his counsel's failure to object.  *Cf. White*, 610 F.3d at 899 (holding *de novo* review of deficiency prong appropriate where the state habeas court assumed the petitioner's counsel was deficient without deciding the issue).

### B. The Deficiency Prong

Even on *de novo* review, a defendant's trial counsel's failure to object to the prosecution's closing argument will only rarely give rise to a successful *Strickland* claim because "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689))  But there is a level of deficient performance at which counsel is no longer functioning at the level the Sixth Amendment requires.  The claim in this case approaches that line, because trial counsel failed to object to two of the most damaging and improper arguments one can imagine in a closing argument at a murder trial: (1) an

10

improper characterization that the defendant confessed to being the shooter, and (2) a lengthy and impassioned plea for the jury to place themselves in the shoes of the victim's parents.

With respect to the first issue, Moran testified to overhearing Petitioner say that he had gone to a motel, and that two people had died there in an accident; however, in response to the prosecutor's direct examination, Moran denied hearing Petitioner say he had committed the murders:

> Q:  Mr. [Moran], do you recall what you told me in the hospital?
>
> A:  Yes.
>
> Q:  And did you tell me that you heard [Petitioner] tell other men that he killed these guys?
>
> A:  No, I didn't hear that he said anything like that.
>
> Q:  You didn't tell me that in the hospital?
>
> A:  No.

Docket Entry No. 17-19 at 35.  The prosecutor twice misrepresented this critical testimony during closing by saying that Moran "admit[ed] to telling me at the hospital that he also overheard the defendant tell others that he had killed those boys" and "I have, also, talked about what [Mr. Moran] heard.  Got a problem, got to fix it, go to a motel.  There is an

accident.  They're bleeding to death.  'I killed them.'"[4]  Docket Entry No.

17-29 at 30, 36.   Petitioner's trial counsel did not object to these

misrepresentations or correct them in his own closing.

> The prosecutor also argued the following in his rebuttal:

> And that's one of the most infuriating things of this case.  Why
> did [Martin Gonzales] die?  Because of a fight?  Because of
> insulting another gang?  Because of disrespect to the defendant?

> You think about it.  Inside that room, 332, is just a gang of
> kids—16, 17-years-old, too young to legally drink, couldn't
> vote, [barely] old enough to drive, all high school students.
> When you think about that, who says it couldn't have been your
> kid?  I know you have kids, probably not members of a gang.
> Who says your kids wouldn't have known them or kids like
> them and be around them at the same time?

> You see, it doesn't matter where or how, but have your kids
> ever disrespected an adult?  And [Petitioner's gang] has shown
> what happens when they disrespect an adult.

> It could have been your kid inside room 332.  It could have
> been your kid that disrespected [Petitioner's gang].   And it
> could have been your kid on the emergency room bed.

Docket Entry No. 17-29 at 56.  Petitioner's counsel did not object to these

statements, which were plainly improper under Texas law.  *See Carmen v.*

*State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet.

ref'd) ("The State may not ask the jurors to place themselves in the shoes of

---

[4] The prosecutor's mistaken reference to more than one victim having been killed
presumably derives from the fact that Moran testified that Petitioner said two people had
died in an accident, and that, although only victim Martin Gonzales was killed in the
attack, another of the teens at the hotel room, Pete Rendon, was seriously wounded.

the victim." (citation omitted)); *Boyington v. State*, 738 S.W.2d 704, 709–10 (Tex. App.—Houston [1st Dist.] 1985, no writ) (finding ineffective assistance when trial counsel had failed to object to prosecutor's statement, during sentencing phase of arson trial, of "what would you do if this happened to your family? . . . How would you feel if your home was firebombed one night and you saw your children on fire?"); *see also Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) ("It is well established that proper jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement." (citations omitted)).

Numerous cases, as well as common sense, dictate that trial counsel may have valid strategic reasons for failing to object to improper argument. *See, e.g.*, *Hernandez v. Thaler*, 398 F. App'x 81, 87 (5th Cir. 2010) (concluding that defense counsel acted reasonably by failing to object to the prosecution's mischaracterization that the defendant strangled his victim with a ligature because an objection might draw attention to the arguably more vicious way in which the defendant actually committed the murder). And, of course, if a counsel's action "is based on well-informed strategic decisions, it is 'well within the range of practical choices not to be second-

guessed.'" *Dorsey v. Thaler*, No. H-10-1342, 2011 WL 4046957, at *18 (S.D. Tex. Sept. 7, 2011) (quoting *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997)).   Indeed, as the Fifth Circuit recently held in addressing a defense counsel's failure to object to the prosecution's improper reference to a confession not in evidence:[5]

> [C]ounsel's decision to forgo objection to the prosecutor's remarks about her client's confession to his cousin was not unreasonable: No confession had been admitted into evidence, and counsel could have reasoned that objecting would have sharpened the jury's focus on the prosecutor's fleeting remarks. Objecting also might have appeared to jurors to be an effort to hide the ball, a devastating consequence for a defense relying largely on jurors' assessments of the veracity of alibi witnesses and the narrative created by defense counsel.

*Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4 (5th Cir. Apr. 2, 2013); *see also Gaines v. Scribner*, No. C 03-1268 PJH (PR), 2007 WL 627911, at *14 (N.D. Cal. Feb. 26, 2007) ("Counsel . . . could reasonably have concluded that an objection was unnecessary because the record would speak for itself. . . .   Competent trial counsel often exercise judgment not to object to argument that is technically objectionable because of competing strategic considerations, such as avoiding alienating the jury, creating an

---

[5] *Thomas* is not directly on point, as the Fifth Circuit analyzed the deficiency prong using the doubly deferential AEDPA standard of review.  *See Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *2–3 (5th Cir. Apr. 2, 2013) (doing so because the state habeas court's judgment was silent and thus, under *Harrington v. Richter*, 131 S. Ct. 770 (2011), it constituted an adjudication on the merits of both the deficiency and prejudice prongs of *Strickland*).

impression that the defendant has something to fear from open debate, or highlighting an argument that the jury might otherwise not focus on." (quoting state court of appeals)).

But in this case there was little to lose and much to gain from objecting to the improper arguments. The most common strategic reason for not objecting to improper closing—that doing so might be counterproductive by drawing more attention to inflammatory or prejudicial information—is less salient when the improper characterization happens twice and an objection can correct the clearly erroneous characterization of critical evidence. *Cf. Walker v. Morrow*, 458 F. App'x 475, 490–492 (6th Cir. 2012) (finding defense counsel's performance objectively deficient when counsel could have gained nothing from letting the prosecutors' improper comments remain unchallenged, and those comments went to the heart of the case). Unlike in *Thomas*, where the confession actually existed but simply was not in evidence, *see Thomas*, 2013 WL 1297269, at *1, in this case there was no real confession that an objection might have drawn the jury's attention to. And the unchallenged mischaracterization in this case was of extreme potency: that Petitioner had been overheard confessing "I killed them," a crown jewel of evidence in any murder trial. Likewise, the cost-benefit analysis favored objecting to the prosecutor's highly

15

inflammatory and extended plea for the jurors to pretend their own children were the victim.

For these reasons, the deficiency prong is a close call.  The Court need not resolve this difficult issue, however, for Petitioner's claim fails under the prejudice prong of *Strickland*.[6]

### C. The Prejudice Prong

Under *Strickland*'s prejudice prong, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  *Id*.  Because habeas petitioners carry the burden of proof to show prejudice, *see Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997), the prejudice prong often allows courts to easily dispose of *Strickland* claims without ruling on the often-thornier question of whether a counsel's performance was constitutionally deficient.  Yet even the prejudice prong gives the Court no easy recourse in this case.

As discussed above, if believed by the jury, the prosecutor's erroneous statement that Petitioner had been heard admitting "I killed them" could have been extremely damaging.  And, although there was certainly sufficient

---

[6] Although not the basis for the Court's denial of the habeas petition, the analysis of the deficiency prong was necessary to show why a certificate of appealability should issue.

evidence for the jury to find Petitioner guilty of murder beyond a reasonable doubt, there was not the "overwhelming evidence of guilt" that often precludes a finding of prejudice. *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). Two of the State's primary witnesses gave conflicting testimony: Montoya testified that he saw Petitioner pull the trigger, whereas Fuentes testified that Petitioner was not the shooter although he did have the authority to order the shooting. Although Petitioner is guilty of murder under either story, the contradictory testimony creates credibility issues (the testimony of one of the State-sponsored witnesses must be wrong) that can infect an entire case, and the prosecution's need to call witnesses with opposing testimony is a telling indicator of the overall strength of the case.[7]

Moreover, Moran—the witness whose testimony concerning Petitioner's statements was mischaracterized in closing—was a more "neutral" witness than Montoya, who was a member of a rival gang, and Fuentes, a member of Petitioner's gang who, at the time of Petitioner's trial, had apparently been charged with violating his probation and aggravated assault.[8] *See* Docket Entry No. 17-24 at 48–50, 88. And while the prejudice

---

[7] Indeed, the prosecutor pursued three conflicting theories of his case during closing: "You don't all have to believe how the defendant did it, just that he did. . . . Two of you might believe he ordered it, eight of you might believe he participated, two of you might believe it was his bullet. . . ." Docket Entry No. 17-29 at 33.

[8] The Court notes that Fuentes denied cooperating with the State. Docket Entry No. 17-24 at 50, 82, 88.

analysis in failure-to-object-to-closing cases often relies on the trial court's jury instruction that lawyer argument is not evidence, *see, e.g.*, *Graves v. Ault*, 614 F.3d 501, 509 (8th Cir. 2010); *Wilkerson v. Blacketter*, 454 F. App'x 569, 571 (9th Cir. 2011); *see also United States v. Bourgeois*, No. C-02-CR-216, No. C-07-223, 2011 WL 1930684, at *104 (S.D. Tex. May 19, 2011), that customary instruction was not given in this case.

However, given the deferential AEDPA standard and Petitioner's burden on this issue, the Court cannot conclude that the state habeas court unreasonably applied *Strickland* in finding no prejudice. Though the State presented three conflicting theories, any one of the three allowed the jury to find Petitioner guilty of murder. Moreover, given his role as the trial judge, the state habeas judge was uniquely positioned to determine whether Petitioner was prejudiced by his counsel's failures to object during closing. *Cf. Kirwan v. Spencer*, 2009 WL 8634420, at *24 (D. Mass. Aug. 25, 2009) (noting, in determining that a prosecutor's allegedly improper comments had not prejudiced the petitioner, that "the trial judge is in the best position to hear the tone of the comments and questions as well as observe the jury's reaction"). Because it was not objectively unreasonable for the state habeas court to hold that Petitioner had failed to show prejudice, federal habeas corpus relief is inappropriate.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken from a final order in a habeas corpus action under 28 U.S.C. § 2254 unless "a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Petitioner has not yet filed a notice of appeal, but this Court may nonetheless rule *sua sponte* whether a certificate of appealability should issue.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  As the Supreme Court has explained, a petitioner makes a substantial showing where he "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (ellipsis in original) (quoting *Slack*, 429 U.S. at 484).

As the above discussion makes clear, although the Court holds that Petitioner is not entitled to habeas relief on his ineffective assistance claim, the question is both difficult and close, and reasonable jurists could disagree

19

with the Court's conclusion.  Thus, a certificate of appealability shall issue on that one claim.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.  The Memorandum and Recommendation of the magistrate court (Docket Entry No. 25) is, excepting Parts IV(B) and V, **ADOPTED**.  Respondent's Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**, and the Petition for Writ of Habeas Corpus (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE**.  Petitioner is **GRANTED** a certificate of appealability regarding his ineffective assistance claim, and **DENIED** a certificate of appealability with respect to his other three claims.

**IT IS SO ORDERED**.

**SIGNED** this 26th day of April, 2013.

_____
Gregg Costa
United States District Judge